# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE UNIVERSITY OF PITTSBURGH—OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION<br><br>Plaintiff,<br><br>v.<br><br>COOK MYOSITE, INC.<br><br>Defendant. | Civil Action No. 2:22-cv-717<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT AND JURY DEMAND**

Plaintiff, The University of Pittsburgh—Of the Commonwealth System of Higher Education ("UPitt"), by and through its attorneys, for its complaint against Defendant Cook Myosite, Inc. ("Cook"), hereby alleges as follows:

## THE PARTIES

1. Plaintiff UPitt is a state-related institution of higher education with its principal place of business at 4200 Fifth Avenue in Pittsburgh Pennsylvania.

2. Upon information and belief, Defendant Cook is a subsidiary of the Cook Group, an Indiana for-profit corporation. Upon information and belief, Cook's principal place of business is at 105 Delta Dr, Pittsburgh, PA 15238; Cook operates a research lab at this location.

## JURISDICTION AND VENUE

3. This is an action for patent infringement under 35 U.S.C. § 271 *et seq.*

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because all claims in this action arise under the patent laws of the United States.

5. This Court has personal jurisdiction over Cook as a corporation at least because Cook has its principal place of business within the Western District of Pennsylvania.

6. Venue in this district is proper under 28 U.S.C. §§ 1391 and 1400 at least because this Court has personal jurisdiction over Cook and infringement has occurred in this judicial district.

## BACKGROUND

7. Plaintiff UPitt was founded in 1787 and is one of the leading research universities in the country.

8. Since at least the mid-1990s, a group of UPitt researchers have studied muscle diseases and their potential therapies. Around the late-1990s, these researchers isolated a unique cell source that they termed "muscle-derived stem/progenitor cells." These cells have vast medical applications given their regenerative properties. For example, these cells can be transplanted into multiple diseased tissues within the musculoskeletal system (e.g., muscle, bone, cartilage, ligament, meniscus) to improve their healing. The discovery of these cells has since led to clinical studies for groundbreaking treatments involving tissue and organ augmentation or regeneration.

9. On February 18, 2002, UPitt provided Cook with a patent license ("License") that would enable Cook to use and commercialize the subject matter described UPitt's patents and patent applications "covering muscle-derived cell technologies developed by Johnny Huard, Michael Chancellor and others from [UPitt]". In exchange, Cook would pay UPitt, *inter alia*, certain royalties.

10. Upon information and belief, Defendant Cook was incorporated with the goal of developing and commercializing "technology related to the collection, selection, and expansion of human skeletal muscle cells for the treatment of various disorders." Cook Myosite: About Us, https://www.cookmyosite.com/about-us (last accessed April 28, 2022).

11. On November 28, 2006, UPitt filed a patent application on behalf of Michael B. Chancellor, Thomas Payne, Ronald Jankowski, and Ryan Pruchnic (collectively, the "Inventors") which application the Patent Office duly and legally issued on July 3, 2012, as U.S. Patent 8,211,423 ("the '423 patent") after examination. The '423 patent is entitled "Muscle derived cells for the treatment of cardiac pathologies and methods of making and using the same" and does not expire until December 23, 2028. The '423 patent falls within the scope of the License described above. A copy of the '423 patent is attached as Exhibit A.

12. All the Inventors were affiliated with UPitt. Michael B. Chancellor was a professor in the Department of Urology, OBGYN, and McGowan Institute of Regenerative Medicine at UPitt; Thomas Payne earned his doctoral degree in bioengineering and was also a postdoctoral researcher at UPitt; Ronald Jankowski earned his bachelor's degree in chemical engineering, master's degree in bioengineering, and doctoral degree in bioengineering from UPitt; Ryan Pruchnic earned his bachelor's degree in biology and his master's degree in exercise physiology from UPitt.

13. Subsequently, Dr. Payne, Dr. Jankowski, and Mr. Pruchnic joined Cook, and Dr. Chancellor consults for Cook. As of the time this complaint was filed, both Dr. Jankowski and Mr. Pruchnic still work at Cook.

14. Between May 2008 to February 2009, each of the Inventors assigned the application that issued as the '423 patent to UPitt, which assignments were timely recorded with the U.S.

Patent and Trademark Office. UPitt is the owner of the '423 patent with all substantial rights, including the exclusive right to enforce, sue, and recover damages for past and future infringements.

15. Upon information and belief, Cook has made, used, sold, and offered to sell skMDC Skeletal Muscle-Derived Cells products ("skMDC Products"). Screenshots of the skMDC Products (and their specifications) listed on Cook's website and a product catalog are attached as Exhibit B.

16. Upon information and belief, Cook uses the patented methods of the '423 patent to make its skMDC Products. For the duration of the License, Cook paid UPitt royalties on Cook's sales of its skMDC Products.

17. Yet on December 4, 2020, after operating under the License for 18 years, Cook unilaterally terminated the License with UPitt.

18. Upon information and belief, Cook continues to make, use, sell, and offer to sell the skMDC Products, which, without the License, constitutes infringement of the '423 patent.

19. Upon information and belief, Cook has had knowledge of the '423 patent since at least as early as February 23, 2009, when Dr. Jankowski (then the Director of Research and Product Development), Mr. Pruchnic (then the Director of Operations), and Dr. Payne (then a Research and Development Manager) assigned the application that issued as the '423 patent to UPitt.

20. Further, the '423 patent and Cook's skMDC Products were specifically identified in a September 2, 2021 cease-and-desist letter from UPitt to Cook.

21. On September 15, 2021, Cook responded to UPitt's cease-and-desist letter. Although Cook improperly asserted that it does not infringe the '423 patent because it purportedly owns the patent, it did not deny that Cook practices the claimed methods of the '423 patent.

22. Upon information and belief, Cook does not have a good-faith basis for believing that it is the rightful assignee of the '423 patent. As such, Cook's infringement of the '423 patent is willful.

## CAUSE OF ACTION

Infringement of the '423 patent

23. UPitt incorporates by reference paragraphs 1 – 22.

24. UPitt is the rightful owner of the '423 patent.

25. Upon information and belief, since December 4, 2020, Cook has made, use, sold, and offered to sell its skMDC Products, and Cook continues to make, use, sell, and offer to sell its Products.

26. Upon information and belief, Cook possesses knowledge of, and is aware of, the '423 patent, and Cook further possesses knowledge that it practices one of more of the claimed methods of the '423 patent.

27. Upon information and belief, Cook's skMDC Products infringe at least one claim of the '423 patent.

28. Cook has committed these acts of infringement without license or authorization.

29. Upon information and belief, Cook has no reasonable basis for believing that any claim of the '423 patent is invalid or otherwise unenforceable.

30. Upon information and belief, Cook has no reasonable basis for believing that it is the owner of the '423 patent.

31. By engaging in the conduct described herein, Cook has injured UPitt and is thus liable for infringement of the '423 patent pursuant to 35 U.S.C. § 271.

32. As a result of Cook's infringement of the '423 patent, UPitt has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Cook's past infringement, together with interest and costs.

33. As a result of Cook's infringement of the '423 patent, UPitt has been, and will continue to be, damaged and will suffer irreparable injury unless the infringement is enjoined by this Court pursuant to 35 U.S.C. § 283 and/or the equitable powers of this Court.

34. Upon information and belief, Cook's continued infringement of the '423 patent is willful, justifying the assessment of treble damages pursuant to 35 U.S.C. § 284. This action is therefore exceptional within the meaning of 35 U.S.C. § 285, entitling UPitt to its attorneys' fees and expenses.

## DEMAND FOR JURY TRIAL

35. UPitt hereby demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, UPitt respectfully requests the following relief:

a) That this Court adjudge and decree that Cook has infringed the '423 patent;

b) That this Court order Cook to pay damages to UPitt sufficient to compensate it for Cook's past infringement and any continuing or future infringement pursuant to 35 U.S.C. § 284;

c) That this Court enter a preliminary and/or permanent injunction against Cook pursuant to 35 U.S.C. § 283 and/or the equitable powers of the Court to prevent further infringement of the '423 patent;

d) That this Court declare that Cook's infringement is willful and award UPitt enhanced damages pursuant to 35 U.S.C. § 284;

  e) That this Court award pre-judgement and post-judgment interests in accordance with 35 U.S.C. § 284 on each of such damages awarded to UPitt, and order an accounting of damages that accrue between the close of act discovery and the date a final judgement is entered in this action;

  f) That this Court determine that this patent infringement case is exceptional and award UPitt its costs and attorneys' fees incurred in this action pursuant to 35 U.S.C. § 285; and

  g) That this Court award such other relief as the Court deems just and proper.

Dated: May 13, 2022         Respectfully submitted,

               */s/ Shannon Huygens*

               _____

               Shannon Huygens (PA ID No. 91000)
               University of Pittsburgh
               Office of University Counsel
               2400 Cathedral of Learning
               4200 Fifth Avenue
               Pittsburgh, PA 15260
               (412) 624-1602
               ShannonHuygens@pitt.edu

                  AND

               *Of Counsel*

               Huiya Wu
               GOODWIN PROCTER LLP
               The New York Times Building
               620 Eighth Avenue
               New York, NY 10018
               Tel.: (212) 813-8800
               HWu@goodwinlaw.com
               (*pro hac vice* to be filed)

               Shovon Ashraf, Ph.D.
               GOODWIN PROCTER LLP
               100 Northern Avenue

Boston, MA 02210
Tel.: (617) 570-1000
SAshraf@goodwinlaw.com
(*pro hac vice* to be filed)

*Attorneys for Plaintiff*

Case 2:22-cv-00717-CCW     Document 1     Filed 05/13/22     Page 8 of 8